**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEWTON A. GREGORIO,
319 3rd Street NW
Washington, DC 20011

*Plaintiff*

v.

NATIONAL DEBT MANAGEMENT LLC, and
KIMBERLEY L. GORDON, an individual
100 W. Court Street
Suite 106
Jeffersonville, IN 47130

LOGUE LAW FIRM P.C., and
ALAN KEITH LOGUE, an individual
3423 Weymouth Court
Marietta, GA 30062

AND DOES 1-50

*Defendants*

Civil Action No. 1:14-cv-00374

**CLASS ACTION**

**COMPLAINT**

Plaintiff Newton Gregorio ("Gregorio"), on behalf of himself and all others similarly situated, files this action against Defendants National Debt Management, LLC, Kimberley L. Gordon, the Logue Law Firm, P.C., and Alan Keith Logue (collectively "Defendants").

## I.

## BACKGROUND

Due to the economic issues that many Americans have faced over the past few years, the debt settlement industry has boomed. Debt settlement firms promise to reduce unsecured debt by 50% or more, and target vulnerable consumers with high debt-to-income ratios in desperate need of financial advice and assistance.

Debt settlement firms, however, generate a significant number of consumer complaints by falsely claiming to reduce unsecured debt, advising consumers to stop paying their creditors, and charging exorbitant fees without producing any results. Consequently, many consumers face increased account balances due to interest and late fees, are sued by their creditors, and have their bank accounts and/or wages garnished, while others are forced to file for bankruptcy protection.

## II.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 in that the RICO and EFTA claims involve a federal question. Supplemental jurisdiction over the state law claims may be exercised under 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. § 1391(b)(2) in that the conduct giving rise to Gregorio's claims occurred in this jurisdiction.

3. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201.1 and 2202.

## III.

## PARTIES

4. Gregorio is an 82-year old sui juris adult resident within the District of Columbia.

5. Gregorio is a consumer as defined by District of Columbia Code § 28-3901(a)(2) in that the Defendants' debt settlement services were primarily for personal, family or household purposes.

6. National Debt Management ("NDM") is, and at all times mentioned herein was, an Indiana limited liability company, with a principal place of business at 100 W. Court Avenue,

Suite 106, Jeffersonville, Indiana 47130. NDM regularly conducts business in the District of Columbia.

7. NDM is, and at all times mentioned herein was, a merchant as defined by District of Columbia Code § 28-3901(a)(3) in that NDM provided Gregorio consumer goods or services in the ordinary course of business which are or would be the subject matter of a trade practice.

8. Kimberley Gordon ("Gordon") is, and at all times mentioned herein was, the principal of NDM and resides in Indiana. Gordon regularly conducts business in the District of Columbia.

9. The Logue Law Firm ("Logue Law") is, and at all times mentioned herein was, a Georgia Professional Corporation with a principal place of business at 3423 Weymouth Court, Marietta, GA 30062 and regularly conducts business in the District of Columbia. Logue Law regularly conducts business in the District of Columbia.

10. Logue Law is, and at all times mentioned herein was, a merchant as defined by District of Columbia Code § 28-3901(a)(3) in that Logue Law provided Gregorio consumer debt settlement services which are a trade practice.

11. Alan Keith Logue ("Logue") is, and at all times mentioned herein was, the principal of Logue Law, and resides at 3423 Weymouth Court, Marietta, GA 30062. Logue regularly conducts business in the District of Columbia

12. Defendants have acted in concert to engage in the acts and practices described throughout this Complaint and each defendant is jointly, severally and vicariously liable for the acts and practices described below.

## IV.

## FACTUAL ALLEGATIONS

### Defendants' Conspiracy

13. Logue, doing business as Logue Law, permits NDM to use its status as law firm as a 'front' for NDM's fraudulent debt settlement services.

14. On information and belief, Logue permits NDM to use the Logue Law name and letterhead in exchange for a monthly fee of $5,000 to solicit unwitting consumers by telephone and in writing for debt settlement services. NDM's employees even answer consumer telephone calls as "Logue Law."

15. Defendants create a false illusion that Logue Law is performing the services, when all of the purported debt settlement services, if any, are rendered solely by non-lawyers at NDM.

16. Logue Law does not control the method, manner, or means by which NDM performs debt settlement services, nor does Logue supervise or control these activities.

17. The unlawful practice of permitting non-lawyer third parties to use law firm letterhead for a fee without any independent professional judgment, review, or attorney interaction is commonly referred to as "renting-a-license."

18. Logue was a "principle [sic] attorney overseeing the activities of Debt Restructuring of America, Inc."—NDM's predecessor in interest found liable by the attorneys general in Oregon and Indiana for engaging in the same or substantially similar fraudulent debt settlement services.

**Defendants' Scheme**

19. Consumers who express an interest in Defendants' services are mailed a "Contract to Employ/Representation Agreement."

20. The Defendants' contract states that they will, *inter alia*, "[n]egotiate with Client's creditors or other parties in order to reach settlements so that Client may avoid the cost and uncertainty of litigation or further collection action."

21. When a consumer enters Defendants' debt settlement program, Defendants require the consumer to provide bank account information.

22. Monthly fees are withdrawn from consumers' bank accounts by means of an automatic bank draft.

23. Defendants collect their fees whether or not any settlements are negotiated or obtained. Thus, when Defendants debit a consumer's personal bank account each month, it immediately disburses the fees amongst themselves.

24. The Defendants represent to consumers, *inter alia*, that "[s]hould Client be sued in a court of law after the effective date of this Contract by a creditor that Client has identified in this Contract, attorneys retained or employed by LOGUE LAW or local counsel retained or employed by LOGUE LAW will defend Client to the best of its abilities."

25. Defendants are not members of the District of Columbia bar, nor do they employ or retain any members of the District of Columbia bar.

**Defendants' Dealings with Gregorio**

26. In early 2012, Gregorio was contacted by a debt settlement firm called Jackson, Hunter, Morrison & Knight ("Jackson") for debt negotiation/settlement services in exchange for

$250/month. Gregorio entered into a written agreement with Jackson to settle a Sears credit card account and began making payments in June and July 2012.

27. In August 2012, "Anthony Reese" from Logue Law contacted Gregorio by telephone stating that Jackson is "shady", was being investigated by the FTC, and encouraged Gregorio to switch to Logue Law for his debt settlement business.

28. Defendants made various misrepresentations, or failed to disclose information, in an effort to induce Gregorio to enter into an agreement, including but not limited to:

- **Unsubstantiated claims of savings**. Defendants represented to Gregorio that their services would save him more than 50% of the total debt; however, Defendants do not have a record of accomplishment that supports this statement.

- **Failure to inform Gregorio he will be subject to continued collection efforts**, including lawsuits, and that his account balances will increase due to nonpayment. Defendants failed to disclose that such efforts occur to consumers on a regular basis.

- **Disparaging bankruptcy as a viable alternative**. NDM and Logue Law stand to make significantly more fees from a consumer enrolled in a debt settlement program than if a consumer filed for bankruptcy protection.

- **Representing that the majority of consumers complete the debt settlement program and become debt free**. Upon information and belief, a high percentage of consumers who attempt Defendants' debt settlement program do not in fact complete the program, and do not become debt free as a result of their services.

- **Advising Gregorio to stop making payments to his creditors**. Gregorio incurred significant interest and late fees during this time and he received calls from creditors and debt collectors.

- **Gregorio had no contact with Logue Law throughout the entire process**. Defendants' debt settlement system was intentionally designed to mislead Gregorio into believing that attorneys would be performing services on his behalf.

29. Logue Law mailed Gregorio a "Contract to Employ/Representation Agreement" between Gregorio and Logue Law, but Gregorio's initials and signature were electronically affixed or "DocuSigned" by Logue Law prior to Gregorio receiving the contract.

30. Gregorio's Sears credit card debt is listed in the "List your creditors" section of the agreement.

31. The Logue Law contract included a "Limited Power of Attorney" form, in which Gregorio "hereby appoint[ed] Logue Law … as my attorney-in-fact, with full power to represent me in negotiating the validity, reduction, settlement, and payment as may be required, of accounts owed to my creditors." Because Defendants acted as an escrowee for payments to Gregorio and the class members' credtiors, a fiduciary duty was owed.[1]

32. On September 20, 2012, Logue Law began debiting Gregorio's bank account $256.29 per month knowing they could not provide the promised services to Gregorio.

33. Gregorio never granted Logue Law authorization, written or otherwise, to debit his bank account.

34. Because of its fiduciary responsibilities, Defendants owed a duty to act in the best interests of Gregorio and the class members.[2]

35. In March 2013, Gregorio received a summons and complaint for a credit card lawsuit filed by Sears in the Superior Court of the District of Columbia. The case caption is Citibank, N.A. vs. Newton A. Gregorio, Case No. 2013 CA 002046 C.

36. In April 2013, Gregorio sought assistance from the Legal Aid Society of the District of Columbia ("Legal Aid").

---

[1] *Command Consulting Group, LLC v. Neuraliq, Inc.*, 623 F.Supp.2d 49, 54 (D.D.C. 2009); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 363 (D.C. 1984) (While the "mere existence of a contract generally does not give rise to a fiduciary duty the D.C. Court of Appeals has held that escrow agents indeed have fiduciary duties to those parties who transfer funds into an escrow as well as those for whom the funds are held). *Wagman v. Lee*, 457 A.2d 401, 404–05 (D.C. 1983).

[2] *High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987); *see also Urban Inv., Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983).

37. With Gregorio's consent, Legal Aid called the phone numbers Gregorio had been using to reach the purported NDM and Logue Law representatives.[3]

38. Upon information and belief, Gordon—using the alias "Lisa Anderson"—called Legal Aid and said Logue is not representing Gregorio, but that Mr. Leslie O. Perry ("Perry") would represent Gregorio at the hearing. Perry was contacted for the first time by NDM, not Logue, three days before the initial scheduling conference and was never paid his fees.

39. Logue thereafter called Legal Aid and denied ever having a contract with Gregorio. Logue claimed that NDM only retains Logue Law to defend collections cases in Georgia. Logue refused Legal Aid's offer to see a copy of the contract between Logue Law and Gregorio on Logue Law letterhead.

40. In a failed attempt to evade responsibility after his scam was exposed, Logue sent Gregorio a letter in May 2013 stating that Gregorio's account was being assigned to NDM because Logue "decided to assign the debt reconstruction practice, which your case has been a part of, to the financial/paralegal firm that is already familiar with your case, National Debt Management, LLC. I have no ownership or financial interest in NDM, LLC. With this letter I am advising you that I am no longer representing you regarding the management and reconstruction of your unsecured indebtedness…."

41. In June 2013, despite the lack of any agreement between NDM and Gregorio, NDM debited Gregorio's checking account for $256.29—the same amount stated in the Logue Law contract.

[3] Gregorio has variously used the following numbers to try to reach those whom he believed represented Logue Law: 888-589-1994 (main line); 770-321-5750 (Keith Logue); 770-321-5650; 770-321-5752; 502-641-4035 (Lisa Anderson); 866-207-4750 (fax); 866-539-2806 (fax).

42. Gregorio never granted NDM authorization, written or otherwise, to debit his bank account.

43. Gregorio immediately contacted his bank and entered a Stop Payment Notice on June 26, 2013 for any future debits submitted by either NDM or Logue Law. During the conversation, Gregorio's bank representative informed him that NDM and Logue Law "are the same."

44. In July 2013, Gregorio settled the Sears credit card case by making a one-time payment to Citibank for $4,000.

45. Gregorio paid a total of $3,062.90 to Jackson, Logue Law, and NDM.

46. At all relevant times, Gregorio was unaware of the relationship between the Defendants.

47. Defendants knew or should have known that a scheme allowing non-lawyers to use and market the name of Logue Law when offering debt settlement services would confuse and deceive consumers into believing they were dealing with attorneys.

48. Defendants' actions are intentional, willful, malicious and in open defiance of state and federal consumer protection statutes.

49. Gregorio has been severely agitated, annoyed, traumatized, emotionally damaged, and unduly inconvenienced by the Defendants' misconduct.

## V.

## CLASS ALLEGATIONS

50. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-49, inclusive, above, as if fully set forth herein. Gregorio seeks to represent the following classes:

51. Gregorio brings this action on behalf of two (2) classes:

A. **Injunctive Class** (DCCPPA and RICO Claims Only)

All natural persons in the United States who, three (3) years prior to the commencement of this action, were solicited by the Defendants for debt settlement services.

B. **Monetary Class**

All natural persons in the United States who, three (3) years prior to the commencement of this action, paid Defendants to perform debt settlement services.

52. The class members are so numerous that joinder is impracticable for the following nonexclusive issues:

- Joinder of all class members would create extreme hardship and inconvenience for the affected persons as they reside all over the country;
- Individual claims by the class members are impractical because the costs to pursue individual claims far exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;
- There are no known individual class members who are interested in individually controlling the prosecution of separate actions;
- The interests of justice will be well served by resolving the common disputes of potential class members in one forum;
- Individual suits would not be cost effective; and
- The action is manageable as a class action.

53. There questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions are:

- Whether the Defendants have participated in a scheme to defraud or obtain money by false pretenses, representations, or promises in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1341;
- Whether the Defendants scheme constitutes an "enterprise" under RICO;
- Whether the Defendants have committed a "pattern of racketeering activity" under RICO;
- Whether due to their uniform acts, Defendants were unjustly enriched or received payments and/or monies that under the principles of equity they cannot retain;
- Whether Defendants breached their fiduciary duties to Gregorio and the class members;
- Whether such practices violate District of Columbia Code § 28-3904 *et seq*.; and
- The amount of damages the Monetary Class has sustained as a result of the Defendants' wrongful conduct, and the proper measure of such damages.

54. The claims of Gregorio are typical of the claims of class members because of the similarity, uniformity and common purpose of Defendants' unlawful conduct. All claims are based on the same facts and the same legal theories.

55. Gregorio will fairly, adequately and vigorously represent the interests of the class members. Gregorio has retained counsel experienced in consumer rights litigation.

**<u>FIRST CLAIM FOR RELIEF</u>**

**VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**18 U.S.C. § 1962 ET SEQ. AND 18 U.S.C. § 1964 ET SEQ.**

56. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-55, inclusive, above, as if fully set forth herein.

57. In violation of 18 U.S.C. § 1962(c), Defendants have conducted, or participated directly or indirectly, in a pattern of racketeering activity through the use of wire and mail by soliciting unwitting consumers via telephone and in writing for debt settlement services under a false illusion that Logue Law is performing the services, when all of the purported debt settlement services were to be rendered solely by non-lawyers at NDM.

58. In violation of 18 U.S.C. § 1962(d), Defendants have conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly, in a pattern of racketeering activity through the use of wire and mail by defrauding unwitting consumers via telephone and in writing for debt settlement services under a false illusion that Logue Law is performing the services, when all of the purported debt settlement services were to be rendered solely by non-lawyers at NDM.

59. As a direct and proximate result, Gregorio and the class members have been injured in their business or property by both the predicate acts of Defendants' pattern of racketeering activity and their investment and reinvestment of income therefrom to operate, expand, and perpetuate their scheme through the use of wire and mail, including paying Logue $5,000 per month to use Logue Law letterhead and collecting monthly fees via automatic bank draft—whether any settlements are negotiated or not—and disbursing those fees amongst the Defendants.

60. Gregorio and the class members seek a judgment in their favor against the Defendants for treble the amount of damages suffered by them in the form of payments made to Defendants as a result of its predicate acts and violations of Section 1962(c) and (d) of RICO, together with treble the amount of interest due on payments delayed or withheld through the Defendants' predicate acts and RICO violations.

## SECOND CLAIM FOR RELIEF

## VIOLATIONS OF THE FEDERAL ELECTRONIC FUNDS TRANSFER ACT ("EFTA")

## 15 U.S.C. § 1693 AND REGULATION E UNDER 12 C.F.R. § 205

61. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-60, inclusive, above, as if fully set forth herein.

62. The EFTA, and Regulation E promulgated thereunder, prohibit the initiation of electronic funds transfers without authorization.

63. Defendants violated the EFTA and Regulation E by initiating or causing to be initiated electronic funds transfers from Gregorio and the class members' bank accounts without authorization.

64. Defendants' unauthorized electronic fund transfers were for personal, family, or household purposes in that the automatic debits were made for purportedly rendering consumer debt settlement services.

65. Defendants' unauthorized electronic fund transfers were initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit Gregorio's and/or the class members' bank accounts.

**THIRD CLAIM FOR RELIEF**

**DECLARATORY AND INJUNCTIVE RELIEF UNDER 18 U.S.C. § 1964(A)**

66. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-65, inclusive, above, as if fully set forth herein.

67. This claim arises under 18 U.S.C. § 1964 which authorizes district courts to enjoin violations of 18 U.S.C. § 1962, and under 28 U.S.C. § 2201 which authorizes associated declaratory relief.

68. As set forth in Count I above, Defendants have violated 18 U.S.C. §§ 1962(c) and (d), and will continue to do so in the future against other consumers without injunctive relief.

69. Enjoining the Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate as Gregorio and the class have no adequate remedy at law and, as set forth in paragraphs 13-49 above, will suffer irreparable harm through additional bank drafts without authorization and/or rendering any debt settlement services in the absence of the Court's declaratory and injunctive relief.

70. Gregorio and the class members seek injunctive relief preventing the Defendants from soliciting, engaging in, or seeking payment for debt settlement services. Gregorio and the class members further pray for an award of attorneys fees and for such other and further relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

**MONEY HAD AND RECEIVED**

71. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-70, inclusive, above, as if fully set forth herein.

72. The Defendants' obtained money from the class members through unfair and deceptive business practices, including unsubstantiated claims of savings, representing that the majority of consumers complete the debt settlement program and become debt free, advising Gregorio and the class members to stop making payments to their creditors.

73. The Defendants' obtained money from Gregorio and the class members through unfair and deceptive business practices that ultimately conferred no benefit upon Gregorio and/or the class members by claiming their services would save Gregorio and the class members more than 50% of the total debt when Defendants do not have a record of accomplishment that supports this statement; Advising Gregorio and the class members to stop making payments to their creditors; Failing to inform Gregorio and the class members they will be subject to continued collection efforts, including lawsuits, and that their account balances will increase due to nonpayment; Disparaged bankruptcy as a viable alternative to Gregorio and the class members' financial difficulties; and Falsely representing that the majority of consumers complete the debt settlement program and become debt free.

74. Gregorio and the class members request compensatory damages, pre and post judgment interest, attorneys fees, costs in bringing this action, and such other and further relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

75. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-74, inclusive, above, as if fully set forth herein.

76. Defendants have received, and continue to receive, a benefit at the expense of the Monetary Class, by making automatic bank drafts for debt settlement services that Defendants do not provide.

77. Defendants have deceptively charged, attempted to collect, and collected amounts that they have unjustly retained at the expense of the members of the Monetary Class in that no debt settlement services have been provided by the Defendants.

78. The circumstances are such that it would be inequitable for the Defendants to retain the monthly fees obtained from Gregorio and the class members without returning the value thereof to Gregorio and the class members in that no debt settlement services have been provided by the Defendants.

79. Gregorio and the class members request compensatory damages, pre and post judgment interest, attorneys fees, costs in bringing this action, and such other and further relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

## VIOLATIONS OF THE CONSUMER PROTECTION PROCEDURES ACT

## DISTRICT OF COLUMBIA CODE § 28-3904 ET SEQ.

80. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-79, inclusive, above, as if fully set forth herein.

81. Defendants violated D.C. Code § 28-3904 *et seq*. by claiming their services would save Gregorio and the class members more than 50% of the total debt when Defendants do not have a record of accomplishment that supports this statement; Advising Gregorio and the class members to stop making payments to their creditors; Failing to inform Gregorio and the class members they will be subject to continued collection efforts, including lawsuits, and that their

account balances will increase due to nonpayment; Disparaged bankruptcy as a viable alternative to Gregorio and the class members' financial difficulties; and Falsely representing that the majority of consumers complete the debt settlement program and become debt free.

82. Defendants also violated the DCCPPA because they are non-lawyers holding themselves out as licensed attorneys for financial gain.[4]

83. Defendants are subject to liability for $1,500 per violation under D.C. Code § 28-3904(k)(1)(A).

84. Defendants are subject to liability for attorney's fees under D.C. Code § 28-3904(k)(1)(B).

85. Defendants are subject to liability for punitive damages under D.C. Code § 28-3904(k)(1)(C).

## SEVENTH CLAIM FOR RELIEF

## BREACH OF FIDICIARY DUTY

86. Gregorio repeats, re-alleges and incorporates by reference paragraphs 1-85, inclusive, above, as if fully set forth herein.

87. A fiduciary relationship existed between Defendants, Gregorio and the class members in that Defendants agreed to provide debt settlement services under the pretext of a law firm as evidenced by the Representation Agreement and Limited Power of Attorney.

88. Defendants violated their duties associated with the fiduciary relationship by claiming their services would save Gregorio and the class members more than 50% of the total

[4] *Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 634 A.2d 433, 437 (D.C.1993)

debt when Defendants do not have a record of accomplishment that supports this statement; Advising Gregorio and the class members to stop making payments to their creditors; Failing to inform Gregorio and the class members they will be subject to continued collection efforts, including lawsuits, and that their account balances will increase due to nonpayment; Disparaged bankruptcy as a viable alternative to Gregorio and the class members' financial difficulties; and Falsely representing that the majority of consumers complete the debt settlement program and become debt free.

89. Gregorio and the class members were damaged as a proximate result of Defendants' breach of their fiduciary duties under the terms of Representation Agreement and Limited Power of Attorney.

**JURY DEMAND**

Gregorio and the class members demand trial by jury on any and all counts for which trial by jury is permitted by law.

DATED: March 8, 2014

Respectfully submitted,

/s/ Dean Gregory

Dean Gregory (Bar No. 1008846)
**LAW OFFICES OF DEAN GREGORY**
1000 Connecticut Avenue NW
Suite 900
Washington, D.C. 20036
Telephone: (202) 905-8058
Facsimile: (202) 776-0136
E-mail: dean@deangregory.com

*Attorney for PLAINTIFFS*